UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    |
ANDREA PLUNKET,                     |
                                    |
                Plaintiff,          |
                                    |      99 Civ. 11006 (KMW)
        -against-                   |
                                    |      OPINION and ORDER
ESTATE OF DAME JEAN CONAN DOYLE,    |
        et al.,                     |
                                    |
                Defendants.         |
                                    |
-----------------------------------X
                                    |
ESTATE OF DAME JEAN CONAN DOYLE,    |
        et al.,                     |
                                    |
                Petitioners,        |
                                    |
        -against-                   |
                                    |
PANNONIA FARMS, INC., and           |
        ANDREA PLUNKET,             |
                                    |
                Respondents.        |
                                    |
-----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

        Petitioners and Judgment Creditors Estate of Dame Jean Conan
Doyle, Geoffrey Michael Pooley, and Charles Foley (collectively,
"Judgment Creditors") ask the Court (1) for a judgment on the
pleadings declaring Respondent and Judgment Debtor Andrea Plunket
("Judgment Debtor") the rightful and/or beneficial owner of Respondent
Pannonia Farms, Inc. ("Pannonia"), and (2) to appoint a receiver to
sell shares in Pannonia's stock to satisfy Judgment Creditors'
judgment against Judgment Debtor (the "Enforcement Motion").  For the
reasons below, to the extent the Court has jurisdiction to hear
Judgment Creditors' Enforcement Motion, it is DENIED.

1

## I.   **Background**

The Enforcement Motion stems from a copyright infringement action brought by Judgment Debtor against Judgment Creditors.  The Court granted Judgment Creditors' motion to dismiss that action.  Judgment Creditors then moved the Court to grant them attorneys' fees and costs pursuant to 17 U.S.C. § 505, which the Court granted in the amount of $135,521.04 (the "judgment debt").

On June 9, 2008, Judgment Creditors filed the Enforcement Motion (1) seeking a special proceeding and judgment, pursuant to Federal Rule of Civil Procedure 69, New York Civil Practice Law and Rules ("CPLR") § 5225(b), and New York Debtor and Creditor Law ("DCL") § 276, declaring Judgment Debtor the rightful and/or beneficial owner of Pannonia based on her (a) dominance and control of Pannonia, and (b) fraudulent conveyance of assets to Pannonia; and (2) seeking appointment and authorization of a Receiver, pursuant to CPLR § 5228, to take possession of and sell shares of Pannonia's stock in order to pay the judgment debt.

In support, Judgment Creditors contrast Judgment Debtor's deposition testimony indicating that she has no income or assets (and has had none since the early 1980s),[1] with her deposition testimony stating that she resides in a home owned by Pannonia and is Pannonia's

---

[1]   In particular, they state that Judgment Debtor's testimony indicates that she does not and has not ever earned income from Pannonia; she earns no salary; has not had a bank account or bought clothes since 1985; does not have any investment accounts; owns no assets, stock, business, corporation, or realty; has not paid for any part of a restaurant meal in the past ten years; and does not have any money of her own.  (See Enforcement Mot. 4-5.)

sole officer.[2]  (Enforcement Mot. 4-6.)  They also believe that she operates and manages a luxury bed and breakfast, which, according to Judgment Debtor's testimony is owned by Pannonia.  (Id. at 5.)  Based on this, Judgment Creditors allege that Judgment Debtor has fraudulently hidden her assets and income from creditors by leaving ownership of Pannonia in her daughter's name while using its assets and finances.  (Id. at 3-4.)

Judgment Debtor, in her Opposition to the Enforcement Motion ("Opposition"), denies that she fraudulently conveyed assets or is the rightful and/or beneficial owner of Pannonia.[3]  Judgment Debtor contends that her father transferred Pannonia to her daughter (his granddaughter) in 1982, and provides evidence in support of this contention.[4]  (Opp'n 3, Ex. 1.)  She acknowledges that she runs Pannonia's bed & breakfast, but argues that she does so in order to pay Pannonia's taxes, maintenance, and improvements.  (Id.)  She also states that her husband, not she, has a lease to a Pannonia-owned home, which he was granted as consideration for loans he made to Pannonia.  (Id.)

Judgment Debtor also argues that there is nothing fraudulent

---

[2]  Judgment Creditors state that Judgment Debtor testified that she is the only person with authority to sign papers on Pannonia's behalf, is the only person responsible for maintaining Pannonia's corporate records and signing its tax returns; and is and has always been the only person with authority to make decisions on Pannonia's behalf.  (See Enforcement Mot. 6.)

[3]  Respondent Pannonia did not file any opposition papers.

[4]  Judgment Debtor's Response does not contain page numbers.  The page numbers used by the Court herein to refer to pages of Judgment Debtor's Response treat the page with the heading "99CVI 11006 (KMW)" as the first page.

about her financial arrangements.  Instead, she states that, "[f]or religious and philosophic reasons, I [Judgment Debtor] renounced owning material possessions during the 1980[]s."  (Opp'n 2.)

Judgment Creditors Reply by arguing that Judgment Debtor has failed to dispute any material facts and by asking the Court for a judgment on the pleadings.  (Reply 3.)

## II.  Discussion

The Court lacks jurisdiction to hear Judgment Creditors' beneficial ownership claim, but does have jurisdiction over their efforts to recover assets Judgment Debtor allegedly fraudulently conveyed to Pannonia.  For the reasons stated below, the Court finds that the pleadings and papers before the Court do not support Judgment Creditors' fraudulent conveyance claim.  Accordingly, the Court enters judgment for Judgment Debtor and against Judgment Creditors in this special proceeding.

### A.    The Court's Jurisdiction

Although the Court has jurisdiction over supplementary proceedings to enforce its judgments, the Court lacks jurisdiction over supplementary proceedings that seek to impose liability on a third-party to the original litigation through alter ego or veil piercing theories.

Federal Rule of Civil Procedure 69(a) ("Rule 69"), provides a mechanism for parties to seek the Court's aid in executing its judgments.  However, the parties can not use proceedings pursuant to Rule 69 to impose liability on a third-party to the original litigation.  A federal court has an "inherent power to enforce its

4

judgments." <u>Peacock v. Thomas</u>, 516 U.S. 349, 357 (1996).  Pursuant to
this power, the Supreme Court has "approved [district courts']
exercise of ancillary jurisdiction over a broad range of supplementary
proceedings involving third parties to assist in the protection and
enforcement of federal judgments." <u>Id.</u>  But district courts'
"ancillary jurisdiction is not justified over a new lawsuit to impose
liability for a judgment on a third party." <u>Id.</u> at 359.

The Second Circuit has clarified <u>Peacock</u>'s limit on district
courts' ancillary jurisdiction. <u>Epperson v. Entertainment Express,</u>
<u>Inc.</u>, 242 F.3d 100 (2d Cir. 2001).  After <u>Peacock</u>, district courts
lack ancillary jurisdiction over "claims of alter ego liability and
veil-piercing, that raise an independent controversy with a new party
in an effort to shift liability." <u>Id.</u> at 106.  In contrast, <u>Peacock</u>
does not preclude district courts' ancillary jurisdiction over a
judgment creditor's effort to reach "assets . . . found in the hands
of a third party," if those assets were fraudulently conveyed to the
third party by the judgment debtor. <u>Id.</u> at 107 (holding that, because
claims for fraudulent conveyance "operate as simple collection
mechanisms . . . [and] do not present a substantive theory seeking to
establish liability on the part of a new party not otherwise liable"
they are "within the scope of the enforcement jurisdiction of the
district court").

<u>Peacock</u>'s limits on district courts' ancillary jurisdiction apply
to enforcement actions brought under Rule 69. <u>Epperson</u> 242 F.3d at
106 n.6 ("The important distinction is not whether the claim is
brought in a [supplementary proceeding under Rule 69 or a] second

action but whether it seeks to impose liability for the underlying judgment on a new party"); see also Knox v. Orascom Telecom Holding S.A.E., 477 F. Supp. 642, 648 (S.D.N.Y. 2007) (finding that, after Peacock, a district court lacks subject matter jurisdiction over a Rule 69 enforcement action if it seeks "'to hold nonparties liable for a judgment'") quoting U.S.I. Properties Corp. v. M.D. Construction Co., 230 F.3d 489, 498 (1st Cir. 2000).

Accordingly, to the extent that Judgment Creditors' Enforcement Motion is "a simple collection action," Epperson 242 F.3d at 107, seeking the Judgment Debtor's assets, even those that may be in the hands of a third-party, the Court has jurisdiction over it.  However, to the extent that Judgment Creditors' Enforcement Motion seeks to "impose liability for the underlying judgment on a new party," id. at 106 n.6, the Court lacks jurisdiction over it.

**B. Procedural Rules Governing This Action**

New York State rules of procedure govern enforcement actions before this Court pursuant to Rule 69.  Fed. R. Civ. P. 69(a)(1) ("[a] money judgment is enforced by a writ of execution," the procedure for which "must accord with the procedure of the state where the court is located").

CPLR § 5225(b), which Judgment Creditors invoke, governs judgment creditors' efforts to secure the property of a judgment debtor, when that property is in a third party's possession.  Under CPLR § 5225(b), judgment creditors may commence a special proceeding to determine if third-party respondents should be required to satisfy a judgment.  The third party will be required to pay money to the judgment creditor if

6

it is shown that (1) the third-party is in possession of money or other personal property (a) in which the judgment debtor has an interest, or (b) that the judgment debtor transferred to the third party, and (2) "the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee."  CPLR § 5225(b) (2008); see also Beauvais v. Allegiance Sec., Inc., 942 F.2d 838, 840-41 (2d Cir. 1991) (describing CPLR § 5225(b)'s two-part test).

### C.  Standard for Review

In a special proceeding commenced under CPLR § 5225(b), the Court "shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised." CPLR § 409(b) (authorizing a court to summarily determine issues in a special proceeding for which no triable issues of fact are in dispute).  If a material fact is in dispute, the Court must not decide on the pleadings but must conduct further evidentiary proceedings. WBP Cent. Assocs., LLC v. DeCola, 855 N.Y.S.2d 210, 212 (N.Y. App. Div. 2008) (remanding CPLR § 5225(b) action for further proceedings because material facts were in dispute); Nat'l Enters., Inc. v. Clermont Farms Corp., 848 N.Y.S.2d 420, 423-24 (N.Y. App. Div. 2007) (same).

### D.  Beneficial Ownership

Judgment Creditors contend that they are entitled to reach Pannonia's assets because Judgment Debtor is a beneficial owner of

Pannonia and/or of its stock shares.[5]  Judgment Creditors do not state
what legal theory of beneficial ownership they advance, but they
support their claim with reference to Judgment Debtor's dominance and
control of Pannonia.  (See, e.g., Enforcment Mot. 7-8.)  Accordingly,
the Court construes Judgment Creditors to argue that Judgment Debtor
beneficially owns Pannonia under a theory of equitable ownership.

Under New York law, a party can use an opposing party's equitable
ownership of a non-party corporation to reach that corporation's
assets under a theory of reverse veil piercing.  See In re Vebeliunas,
332 F.3d 85, 91-92 (2d Cir. 2003) (considering debtor's equitable
ownership of a trust and property owned by the trust in deciding
whether to reverse pierce their veil); cf. Freeman v. Complex
Computing, Inc., 119 F.3d 1044, 1051 (2d Cir. 1997) (piercing a
corporation's veil to reach its equitable owner); see generally Am.
Fuel Corp. v. Utah Energy Dev. Co., 122 F. 3d 130, 134 (2d Cir. 1997)
(noting that New York law recognizes reverse veil piercing actions).

However, as stated above, federal district courts lack
jurisdiction over ancillary actions that seek to impose liability on
third-parties to the original action.  See Epperson, 242 F.3d at 106
(finding that district courts lack ancillary jurisdiction over "claims
of alter ego liability and veil-piercing, that raise an independent
controversy with a new party in an effort to shift liability").

Accordingly, to the extent that Judgment Creditors petition the

---

[5]  Judgment Creditors state both that "the stock of Pannonia is
an asset beneficially belonging to Plunket," Enforcement Mot. 7, and
that "Plunket is the rightful or beneficial owner of Pannonia."  Id.
at 8.

Court for a special proceeding under CPLR § 5225(b) in order to reverse-pierce Pannonia's corporate veil under a theory of equitable ownership and/or under Judgment Debtor's dominance and control of Pannonia, the Court lacks jurisdiction to consider it.

### E. Fraudulent Conveyance

Judgment Creditors also contend that they are entitled to reach Pannonia's assets because they include assets Judgment Debtor has fraudulently conveyed to Pannonia. (Enforcement Mot. 3-4.) CPLR § 5225(b) may be used to bring "a claim to set aside an allegedly fraudulent conveyance of money, assets, or property." WBP Cent. Assocs., LLC v. DeCola, 855 N.Y.S.2d 210, 211 (N.Y. App. Div. 2008). "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL § 276. Accordingly, in order to make out a claim of fraudulent conveyance, Judgment Creditors must prove both that (1) Judgment Debtor conveyed something of value to Pannonia and (2) she did so with the "actual intent . . . to hinder, delay, or defraud either present or future creditors." Id.

"Conveyance" as used in DCL § 276, "includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." DCL § 270.

Judgment Creditors do not clearly allege, let alone substantiate, that Judgment Debtor has done anything that meets the statutory definition of conveyance. They come closest to implying that Judgment

Debtor actually <u>conveyed</u> assets to Pannonia when they allege that she "has fraudulently orchestrated and organized her finances and the finances of Pannonia so that, on paper, she owns no assets, has no bank accounts, pays no expenses, earns no income and incurs no costs for food, lodging, travel or leisure," Enforcement Mot. 3, and when they state that she has and continues to "fraudulently utilize Pannonia for the purpose of hiding assets and income rightly and/or beneficially belonging to" her.   <u>Id.</u>

In support, they point to the Pannonia-owned luxury bed and breakfast Judgment Debtor allegedly operates and manages, the Pannonia-owned house that she allegedly lives in, and her deposition testimony that she has no assets or income, is not an employee or owner of Pannonia, and is Pannonia's sole officer.   Judgment Debtor does not dispute any of these facts; indeed, her testimony established them.[6]

Judgment Creditors have failed to establish that Judgment Debtor made a conveyance to Pannonia, fraudulent or otherwise.   The facts recited above might well be relevant to deciding whether Judgment Debtor is the equitable owner of Pannonia and/or whether a court could reach Pannonia's assets on an alter ego or veil piercing theory. However, they do not indicate any "payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance."   DCL § 270.

---

[6]   Judgment Debtor's papers are not entirely clear but she appears to concede that she runs the bed and breakfast owned by Pannonia.   (Resp. 4.)

Judgment Creditors have not established, on the undisputed facts before the Court, that Judgment Debtor made a fraudulent conveyance to Pannonia.[7]  Accordingly, judgment in this special proceeding must be entered in favor of Judgment Debtor and against Judgment Creditors.

**III.  Conclusion**

For the above-stated reasons, to the extent that the Court has jurisdiction to hear Judgment Creditors' Enforcement Motion, D.E. 32, it is DENIED and judgment in this special proceeding is entered in favor of Judgment Debtor and against Judgment Creditors.

The Clerk of the Court shall continue to designate this case CLOSED.


SO ORDERED.

Dated:    New York, New York
          January **6** , 2009

                              _Kimba M. Wood_
                              Kimba M. Wood
                              United States District Judge

---

[7]  Because the Court finds that Judgment Creditors failed to prove that Judgment Debtor conveyed anything to Pannonia, it does not reach the question of Judgment Debtor's alleged fraudulent intent.

11